**Vega v Metropolitan Tr. Auth.**

2024 NY Slip Op 32949(U)

August 20, 2024

Supreme Court, New York County

Docket Number: Index No. 451813/2018

Judge: David B. Cohen

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

PRESENT:    **HON. DAVID B. COHEN**                    PART 58
                                                *Justice*

-------------------------------------------------------------------------------X

CARLOS VEGA,

                              Plaintiff,

                              - v -

METROPOLITAN TRANSIT AUTHORITY, MTA CAPITAL
CONSTRUCTION COMPANY, TUTOR PERINI
CORPORATION,

                              Defendants.

-------------------------------------------------------------------------------X

| | |
|---|---|
| INDEX NO. | 451813/2018 |
| MOTION DATE | 12/12/2023 |
| MOTION SEQ. NO. | 002 003 |

**DECISION + ORDER ON
MOTION**

The following e-filed documents, listed by NYSCEF document number (Motion 002) 53, 54, 55, 56, 57, 58, 59, 60, 61, 62, 63, 64, 65, 66, 67, 68, 69, 70, 71, 72, 85, 87, 89, 91, 93, 94, 95, 99, 100, 103, 104, 107, 108, 109, 110, 111, 112, 114, 115, 117, 118, 119, 120, 121, 122

were read on this motion to/for                    JUDGMENT - SUMMARY                    .

The following e-filed documents, listed by NYSCEF document number (Motion 003) 73, 74, 75, 76, 77, 78, 79, 80, 81, 82, 83, 84, 88, 90, 92, 96, 97, 98, 101, 102, 105, 106, 113, 116, 123, 124

were read on this motion to/for                    DISMISS                    .

In this Labor Law action, defendants/third-party plaintiffs Metropolitan Transportation

Authority s/h/a Metropolitan Transit Authority (the MTA), the MTA Capital Construction

Company (the MTACC) and Tutor Perini Corporation (Tutor Perini) (collectively movants)

move: 1) pursuant to CPLR 3212 (mot. seq. 002), for summary judgment dismissing plaintiff's

claims against them pursuant to Labor Law §§ 200 (common-law negligence), 240(1), and

241(6); and 2) for summary judgment pursuant to CPLR 3212 on their third-party claim for

contractual indemnification against third-party defendant Rebar Steel Corporation (RSC).

Plaintiff opposes the motion and cross-moves, pursuant to CPLR 3212, for summary judgment

on his Labor Law § 240(1) claim.

**451813/2018   VEGA, CARLOS vs. METROPOLITAN TRANSIT AUTHORITY**          **Page 1 of 13**
  **Motion No.  002 003**

[* 1]

In motion sequence 003, RSC moves, pursuant to CPLR 3212, for summary judgment dismissing the complaint, as well as the third-party claims asserted by the MTA, MTACC, and Tutor Perini against it for common-law and contractual indemnification and breach of contract. Plaintiff opposes the motion.

## I.     BACKGROUND

This case arises from an incident on December 11, 2017 in which plaintiff, a laborer employed by RSC, was allegedly injured while loading bundles of rebar onto the bed of a truck at the Amityville Yard, located at 29-85 Northern Boulevard in Queens, New York (the yard). The yard, owned by the MTA and/or MTACC, was a staging area for materials being used for an MTA tunnel project.

In April 2016, Tutor Perini was hired by the MTA and/or the MTACC to build caverns and tracks for the East Side Access Project connecting the Long Island Railroad to Grand Central Station (the project). That same month, Tutor Perini subcontracted with RSC to cut, bend and install reinforcing steel at the yard; the subcontract identified MTACC as owner of the project and Tutor Perini as the general contractor. Although plaintiff alleges in his statement of undisputed facts that "the MTA" owned the site and movants admitted same in their response, the only documentation submitted with the motions regarding the ownership of the site was the said subcontract.

> Paragraph 4 of the subcontract provided, inter alia, that RSC agreed
>
> [t]o the fullest extent allowed by New York Law, to indemnify, defend and save harmless [the MTACC and Tutor Perini] and their officers, employees, consultants and agents from and against any and all claims, debts, demands, damages, judgments, awards, losses, liabilities, including but not limited to vicarious liability, interest, attorneys' fees, costs and expenses of any kind at any time arising out of or in any way connected with [RSC's] performance or failure to perform the Subcontract work, or the acts or omissions of [RSC]…except that this provision does not require that [RSC] indemnify [Tutor Perini] from loss, damage, expense, liability or other potential or incurred debt under this

451813/2018   VEGA, CARLOS vs. METROPOLITAN TRANSIT AUTHORITY
Motion No.  002 003

Page 2 of 13

provision caused by [Tutor Perini's] negligence or willful misconduct or that [RSC] indemnify [the MTACC] from loss, damage, expense, liability or other potential or incurred debt under this provision caused by [the MTACC's] negligence or willful misconduct.

Paragraph 5(D)(1) required RSC to procure insurance for the contractor and other parties set forth in exhibit B, and to provide labor to move materials inside the tunnels.

On July 25, 2019, plaintiff commenced the captioned action by filing a summons and complaint in Supreme Court, Bronx County, and the parties thereafter stipulated to move the venue of the action to New York County. In his complaint, plaintiff alleged claims for common-law negligence and violations of Labor Law §§ 200, 240(1) and 241(6). The movants joined issue by filing an answer denying the allegations in the complaint and thereafter commenced a third-party action against RSC for, inter alia, common-law indemnification and contribution (first cause of action), contractual indemnification (second cause of action), and breach of contract for failure to provide insurance (fourth cause of action). RSC then filed an answer to the third-party complaint and counterclaimed against MTA, MTACC and Tutor

### A. Plaintiff's 50-h Testimony

At his 50-h hearing, plaintiff testified that his work at the yard on the day of the incident was related to the project. Rebar was stored at the yard so that it could be bent into proper shape to be installed in the tunnel, and it could not be brought directly into the tunnel before it was bent. As of the time of the accident, plaintiff had spent about 3 weeks working in the tunnel and about 2 weeks working in the yard.

At the time of the accident, plaintiff was standing on the bed of a flatbed truck, about five to six feet above the ground, while an RSC coworker lowered a bundle of rebar onto the truck bed with a forklift. As the rebar was lowered from a height of 20-25 feet, "it jumped up" and plaintiff's right leg and foot became pinched between the rebar and the truck. As he tried to

451813/2018   VEGA, CARLOS vs. METROPOLITAN TRANSIT AUTHORITY
Motion No. 002 003

Page 3 of 13

3 of 13

move the rebar off of his leg, it moved and struck him in the chest, knocking him backwards off of the bed of the truck, and he fell to the ground.

According to plaintiff, although rebar should be strapped with two metal cables and a tag line when being loaded, nylon straps were used instead, and since no tag line was available, he had to use his hand to guide the rebar onto the truck. He estimated that each bundle of rebar weighed between 320 and 810 pounds.

### B. Plaintiff's Deposition Testimony

At his deposition, in addition to reiterating his 50-h testimony, plaintiff testified that at the time of the incident, the rebar, tied together with nylon straps, was loaded onto the truck using a forklift operated by an individual named Terrance, who was a steelworker and RSC's yard foreman. No construction was being performed at the yard at the time. Plaintiff's coworker, who was also on the bed of the truck, directed Terrance as to where and how the bundle should be set down. When Terrance lowered the rebar, it hit plaintiff in the ankle and chest and threw him from the bed of the truck. He could not avoid being struck by the rebar since he was standing against the cab of the truck.

### C. Tutor Perini's Deposition Testimony

Tutor Perini's safety manager testified that the yard was a staging area for construction materials to be used at the project but that no construction was performed there. Plaintiff's work was not directed by the MTA or Tutor Perini.

### D. RSC's Deposition Testimony

RSC's foreman, who did not witness the accident, testified that his duties included "run[ning] a crew of men to install rebar" and that plaintiff's job was to load and unload trailers. At the yard, which was used as a storage and work area for all trades, RSC cut and bent rebar to

**451813/2018   VEGA, CARLOS vs. METROPOLITAN TRANSIT AUTHORITY**
**Motion No.  002 003**

**Page 4 of 13**

[* 4]

4 of 13

be installed in the tunnel. Although Tutor Perini had overall responsibility for safety at the yard and had stop work authority, plaintiff was supervised only by RSC forepersons.

## II.     DEFENDANTS' MOTION AND PLAINTIFF'S CROSS-MOTION (seq. 002)

### A.     Contentions

Defendants argue that plaintiff's common-law negligence/Labor Law § 200 claims must be dismissed since they did not have the authority to control the activity which injured plaintiff. They observe that the forklift driver was an RSC employee and that RSC's foreperson testified that plaintiff was directed only by RSC employees.

Defendants further maintain that section 240(1) does not apply herein because no construction was being performed at the time and place of the accident; the rebar did not bounce but instead was lowered onto plaintiff's ankle; a fall from a flatbed truck or an injury sustained loading or unloading a truck is not an elevation-related risk; and that using longer straps would not have prevented the incident since plaintiff was standing up against the cab of the flatbed without room to move.

Defendants also contend that they are not liable pursuant to section 241(6) because no construction, excavation or demolition work was being performed where plaintiff was working. They assert that the Industrial Code sections they allegedly violated are inapplicable herein. Finally, defendants argue that they are entitled to summary judgment on their third-party claim for contractual indemnification against RSC since they were not responsible in any way for the accident.

In opposition, plaintiff argues that dismissal of the section 200 claim must be denied since defendants, as owners and contractors, were responsible for the means and methods of his

451813/2018   VEGA, CARLOS vs. METROPOLITAN TRANSIT AUTHORITY
Motion No.  002 003

Page 5 of 13

5 of 13

work. Plaintiff also asserts that defendants are not entitled to summary judgment on their section 241(6) claim because they violated section 23-6.2 of the Industrial Code.

Plaintiff further asserts that defendants' motion pursuant to section 240(1) must be denied, and that his motion for partial summary judgment on this claim should be granted. Specifically, plaintiff argues that the yard was a construction site within the scope of section 240(1); he was engaged in the erection of a structure at the time of the incident; and he was injured by an improperly-secured object being lowered.

In reply, defendants argue that plaintiff's common-law negligence and section 200 claims must be dismissed since they neither had notice of any dangerous condition nor controlled the means and methods of the work which injured plaintiff. They also reiterate their argument that section 240(1) is inapplicable herein, and that section 241(6) is inapplicable because no construction was being performed at the site of the accident and there is no evidence that materials produced at the site of plaintiff's accident were taken to the project site where they were used.

In his reply, plaintiff argues that section 240(1) applies herein since the rebar was an improperly secured load and he was covered by the statute since the rebar he was loading was to be driven to a tunnel under construction across the street from the accident site.

B.     Analysis

It is well-settled that section 240(1) applies where, as here, a load of material(s), due to its weight, is capable of generating significant force (*see Grigoryan v 108 Chambers St. Owner*, LLC, 204 AD3d 534 [1st Dept 2022]), and the safety device hoisting the material, here the rebar, "proved inadequate to shield the injured worker from harm directly flowing from the application

451813/2018 VEGA, CARLOS vs. METROPOLITAN TRANSIT AUTHORITY
Motion No. 002 003

Page 6 of 13

[* 6]

of the force of gravity to an object or person." (*Rivera v 95th & Third LLC*, ___ AD3d ___ [1st Dept 2024]).

Plaintiff demonstrated his prima facie entitlement to summary judgment on his cross-motion against defendants by establishing that he was injured when pinned against the cab of the truck and struck in the chest by an improperly hoisted or inadequately secured load of rebar weighing between approximately 300 and 800 pounds while working at the yard, which caused him to fall off the truck (*see Narducci v Manhasset Bay Assoc.,* 96 NY2d 259, 268 [2001]; *Hayek v Metro. Transp. Auth.*, 195 AD3d 568 [1st Dept 2021]).

In *McLean v Tishman Constr. Corp*., cited by plaintiff, the plaintiff was injured when a metal beam being placed on a flatbed truck fell from the blades of a forklift, slamming the plaintiff's foot and causing him to fall from the truck. As determined by the Appellate Division, First Department, the plaintiff's injuries "were the direct consequence of a failure to provide adequate protection against a risk arising from a physically significant elevation differential." (144 AD3d 534, 534-535 [1st Dept 2016], *quoting Runner v New York Stock Exch*., *Inc*., 13 NY3d 599, 603 [2009]).

Defendants argue that a four to five foot descent from a flatbed trailer does not fall within the scope of Labor Law section 240(1), relying on *Toefer v Long Island Railroad,* 4 NY3d 399 (2005). However, that case is distinguishable since it did not involve a falling object.

Defendants also rely on *Cabezas v Consol. Edison,* 296 AD2d 522 (2d Dept 2002) for the proposition that section 240(1) does not apply herein. In that case, which is also distinguishable, the plaintiff was unloading pipes from a flatbed truck while standing on the ground when one of the pipes being passed to him by a co-worker fell and injured him. The Appellate Division, Second Department reversed the grant of summary judgment to plaintiff pursuant to section

240(1) on the ground that no elevation risk existed simply because there was a height differential between the bed of the truck and the ground and that, although he was at a construction site, plaintiff was simply engaged in routine work not protected by the statute.

While defendants also contend that plaintiff is not protected by section 240(1) because he was not injured at a construction site, the application of section 240(1) is not limited to work performed at an actual construction site (*see Joblon v Solow*, 91 NY2d 457, 464 [1998]). "The Court of Appeals has rejected an interpretation of Labor Law § 240 (1) that 'would compartmentalize a plaintiff's activity and exclude from the statute's coverage preparatory work essential to the enumerated act'" (*Saquicaray v Consolidated Edison Co. of N.Y., Inc.*, 171 AD3d 416, 417 [1st Dept 2019], quoting *Saint v Syracuse Supply Co.*, 25 NY3d 117, 125 [2015]).

"It is neither pragmatic nor consistent with the spirit of the statute to isolate the moment of injury and ignore the general context of the work." (*Mananghaya v Bronx-Lebanon Hosp. Ctr.*, 165 AD3d 117, 123 [1st Dept 2018] [*citations omitted*]). "Thus, even where the worker is engaged in a task that is 'ancillary' to work falling under one of the enumerated categories of covered work, he or she will be covered by the statute's protections where his work is 'an integral part' of the larger project." (*Id*., at 123 ([*citations omitted*]).

Here, plaintiff was engaged in transporting rebar that had been bent to be installed in the tunnel. Moreover, the subcontract required his employer, RSC, to move materials inside the tunnel (*see Saquicaray*, 171 AD3d at 417, *citing Prats v Port Auth. of N.Y. & N.J.*, 100 NY2d 878, 881-882 [2003]). Thus, plaintiff demonstrates that he was engaged in work ancillary to construction in the tunnel.

As plaintiff's cross-motion for summary judgment on his section 240(1) claim against defendants is granted, there is no need to address the branch of defendants' motion seeking to

451813/2018   VEGA, CARLOS vs. METROPOLITAN TRANSIT AUTHORITY          Page 8 of 13
   Motion No.  002 003

8 of 13

dismiss the claim. Additionally, since defendants are liable to plaintiff pursuant to section 240(1), it is unnecessary to address plaintiff's claims pursuant to Labor Law §§ 200 and 241(6) (*see Corleto v Henry Restoration Ltd.*, 206 AD3d 525, 526 [1st Dept 2022]).

However, if addressed, the Labor Law 200 and common-law negligence claims would be dismissed as plaintiff's injury arose from the means and manner of his work, over which defendants exercised no supervision or control (*see Cappabianca v Skanska USA Bldg. Inc.*, 99 AD3d 139, 143-144 [1st Dept 2012] [internal quotation marks and citations omitted] [when injury is caused by manner and means of work, owner or general contractor is liable if it "actually exercised supervisory control over the injury-producing work"]).

As to plaintiff's Labor Law § 241(6) claim predicated on a violation of Industrial Code 23-6.2, that section relates to material hoisting and the rigging, rope and chains used for material hoists. However, forklifts are specifically exempted (23-6.1[a]), unless they are being used as a substitute power source for hoisting and pulling materials with a rope (and not for their intended use) (*see Rought v Price Chopper Operating Co., Inc.*, 73 AD3d 1414 [3d Dept 2010]). As there is no evidence that the forklift was being used as a substitute power source, defendants have met their burden of demonstrating that the Code section is inapplicable, and plaintiff raises no triable issue in opposition.

### III. RSC's MOTION FOR SUMMARY JUDGMENT (seq. 003)

RSC moves for summary judgment dismissing the complaint against defendants as well as the third-party claims against it for contribution and common-law and contractual indemnification. In support of its motion, RSC argues that plaintiff's claim pursuant to section 240(1) must be dismissed since he was not engaged in any activity protected by the statute and his fall from the truck was not a fall from an elevated work surface. It argues that plaintiff's

451813/2018   VEGA, CARLOS vs. METROPOLITAN TRANSIT AUTHORITY
Motion No.  002 003

Page 9 of 13

9 of 13

[* 9]

section 241(6) claim must be dismissed because he failed to allege an applicable section of the Industrial Code, and the section 200 claim must be dismissed as against defendants because it was RSC, and not defendants, who supervised plaintiff's work.

Further, RSC maintains that defendants' contribution and common-law indemnification and indemnification third-party claims must be dismissed because plaintiff did not sustain a "grave injury," and that the breach of contract third-party claim for failure to procure insurance must be dismissed since it procured such insurance.

In opposition, plaintiff argues that section 240(1) applies herein since he was injured while loading rebar to be used in the construction of the tunnel and the rebar had an insufficiently controlled descent. Plaintiff further maintains that defendants violated Industrial Code section 23-6.2, which sets forth requirements for material hoisting equipment, and that his section 200 claim cannot be dismissed since Tutor Perini controlled the means and methods of his work.

In reply, RSC reiterates its arguments, and also argues that section 23-6 of the Industrial Code is inapplicable to plaintiff's accident as it specifically exempts forklifts and there is no indication that the forklift at issue was configured to be a multipurpose machine.

Initially, RSC's argument that defendants' third-party claims against it are barred by Workers' Compensation (WCL) section 11 is without merit. Under WCL section 11, an employer may be liable to third parties for contribution or indemnification where an employee suffers a "grave injury" or enters into a binding contractual indemnification agreement (*see Noel v 336 East 95th Realty LLC*, 209 AD3d 50 [1st Dept 2024]).

Here, as RSC entered into a subcontract with Tutor Perini pursuant to which it was required to indemnify MTACC and Tutor Perini, the third-party claims against RSC are not

451813/2018   VEGA, CARLOS vs. METROPOLITAN TRANSIT AUTHORITY
  Motion No.  002 003

Page 10 of 13

10 of 13

barred by the WCL.  However, since the MTA was not a party to the contract, and absent evidence that plaintiff sustained a "grave injury", RSC is entitled to dismissal of MTA's third-party claims against it for contribution and common-law indemnification.

As noted previously, paragraph 4 of the subcontract between Tutor Perini and RSC required RSC to indemnify MTACC and Tutor Perini for any vicarious liability incurred in connection with the project.  Since MTACC and Tutor Perini are vicariously liable herein pursuant to Labor Law § 240(1), paragraph 4 applies.

Although RSC argues that Tutor Perini may have been negligent since it had responsibility for site safety and owned or rented the forklift involved in the accident, the evidence establishes that only RSC's employees directed the means and methods of plaintiff's work. (*see Haynes v Boricua Vil. Hous. Dev. Fund Co., Inc.*, 170 AD3d 509 [1st Dept 2019] [general responsibility for site safety does not rise to level of supervisory control required to impose liability on contractor for incident caused by means and methods of work]).

Therefore, RSC must contractually indemnify MTACC and Tutor Perini for any damages arising from the alleged incident (*see Ruisech v Structure Tone Inc.*, 208 AD3d 412 [1st Dept 2022]).

As discussed previously, defendants are entitled to dismissal of plaintiff's Labor Law §§ 241(6) and 200 and common-law negligence claims (*supra*, II.B.).

Finally, paragraph 5(D)(1) of the subcontract required RSC to procure insurance for the contractor, Tutor Perini, and any other parties enumerated in exhibit B to the subcontract. However, no exhibit B to the subcontract was attached to the policy submitted with the motion. Moreover, page 11 of 14 of the subcontract, which may or may not address issues regarding insurance coverage, is not attached to the motion papers. Since RSC failed to establish as matter

451813/2018   VEGA, CARLOS vs. METROPOLITAN TRANSIT AUTHORITY
Motion No.  002 003

Page 11 of 13

11 of 13

[* 11]

of law that it procured liability insurance for all parties, the branch of its motion seeking dismissal of the fourth cause of action in the third-party complaint is denied. *See Douglas v Roseland Dev. Assoc.*, LLC, 225 AD3d 467 (1st Dept 2024) (*citation omitted*).

## IV.     CONCLUSION

Accordingly, it is hereby

ORDERED, that defendants' motion for summary judgment and plaintiff's cross-motion for partial summary judgment (seq. 002) is granted to the extent of:

(1)     granting plaintiff partial summary judgment on his Labor Law § 240(1) claim against defendants;

(2)     granting defendants summary dismissal of plaintiff's Labor Law §§ 241(6) and 200 and common-law negligence claims against them, and those claims are severed and dismissed;

(3)     granting defendants' summary judgment on their third-party contractual indemnity claim against Rebar Steel Corporation;

And is otherwise denied; it is further

ORDERED, that third-party defendant Rebar Steel Corporation's motion for summary judgment (seq. 003) is decided as follows:

(1)     granting summary dismissal of plaintiff's Labor Law §§ 241(6) and 200 and common-law negligence claims against it, and those claims are severed and dismissed, and denying dismissal of plaintiff's Labor Law § 240(1) claim;

(2)     granting dismissal of defendant//third-party plaintiff Metropolitan Transportation Authority s/h/a Metropolitan Transit Authority's third-party contribution and contractual and common-law indemnity claims against Rebar Steel Corporation;

451813/2018   VEGA, CARLOS vs. METROPOLITAN TRANSIT AUTHORITY
Motion No.  002 003

Page 12 of 13

(3)    denying dismissal of defendants/third party plaintiffs MTA Capital Construction Company and Tutor Perini Corporation's third-party claims for contribution and common-law and contractual indemnity; and

(4)    denying dismissal of the third-party claim for failure to provide insurance;

And it is further

ORDERED, that the parties appear for a settlement/trial scheduling conference on November 20, 2024, at 10:00 a.m., at 71 Thomas Street, Rom 305, New York, New York.

| 8/20/2024 | | DAVID B. COHEN, J.S.C. |
|---|---|---|
| DATE | | |

| CHECK ONE: | | CASE DISPOSED | | X | NON-FINAL DISPOSITION | | |
|---|---|---|---|---|---|---|---|
| | | GRANTED | DENIED | X | GRANTED IN PART | | OTHER |
| APPLICATION: | | SETTLE ORDER | | | SUBMIT ORDER | | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | | FIDUCIARY APPOINTMENT | | REFERENCE |

**451813/2018   VEGA, CARLOS vs. METROPOLITAN TRANSIT AUTHORITY**     **Page 13 of 13**
Motion No.  002 003

13 of 13